HILKER, Respondent, vs. WESTERN AUTOMOBILE INSUR-
ANCE COMPANY, Appellant.

*April 30—June 11, 1930.*
*February 14—March 10, 1931.*

For the appellant there were briefs by *Hoyt, Bender, Trump, McIntyre & Hoyt* and *Bender, Trump, McIntyre &*

,*Freeman,* attorneys, and *Eugene L. McIntyre* of counsel, all of Milwaukee, and oral argument by *Mr. McIntyre*.

For the respondent there were briefs by *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *John B. Simmons*.

The following opinion was filed June 11, 1930:

STEVENS, J. (1) The case presents a question of vital importance to both insurer and insured, which has been considered by this court in but a single case, decided in 1916. *Wisconsin Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 155 N. W. 1081. Since that case was decided, a great body of automobile law has been developed. The court at that time did not see, and could not then foresee, the problems that would arise under the provisions of these policies which give the insurer the complete and absolute control of all claims arising out of automobile accidents.

In view of the fact that these contracts of insurance are prepared by the company and are not prescribed by law, the tendency of the decisions has been to extend, rather than to circumscribe, the field of liability on the part of the company and to hold that the rights of the insured "go deeper than the mere surface of the contract written for him by the defendant. Its stipulations imposed obligations based upon those principles of fair dealing which enter into every contract." *Brassil v. Maryland Cas. Co.* 210 N. Y. 235, 104 N. E. 622, L. R. A. 1915A, 629, 632.

(2) The parties knew when they made this contract that a large percentage of these cases are settled without litigation, and that such adjustments were one of the methods of protecting the interests of the insured which were commonly used to discharge the duty imposed upon these companies by their policies. That this was in the minds of the parties when they made this contract is shown by the fact that the policy takes from the insured all right to adjust any claim,

and requires him to aid the company in effecting a settlement.

"The adjustment of controversy is always favored by the law. But here the claim is that this field of operation is left as a no man's land. The insured is prevented from entering upon it, and the insurer cannot be asked to do so, or be held accountable for his conduct if he does so enter. The creation of such a situation is not to be implied. It could arise only from the explicit and unmistakable agreement of the parties." *Douglas v. United States F. & G. Co.* 81 N. H. 371, 127 Atl. 708, 37 A. L. R. 1477, 1484. In the absence of such an agreement, the company must be held liable for any want of good faith in defending the action or in attempting to adjust the claims made against the plaintiff.

(3) The appellant raises no question as to the instructions of the court. The chief question presented is whether the answers of the jury are sustained by the evidence. In determining this question we must consider the relationship that existed between these parties. For a consideration fixed by it, the defendant company contracted to indemnify the plaintiff against the very claims that were the basis of the judgments totaling $10,500. As a condition of affording plaintiff that protection, the company assumed absolute control of the adjustment of all claims and of all litigation arising out of such claims.

Under such a contract there is no escape from the conclusion that the insurance company became the agent of the insured for the purpose of handling such claims and of conducting such litigation. The determination in *Wisconsin Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 52, 155 N. W. 1081, that the insurance carrier "could not be the agent of the insured under such a policy of insurance" must be overruled.

This determination that the company was not the agent of the insured was "put upon the ground that, if there were

such a relation, the insurer would be bound to consider the interests of the insured when in conflict with its own. It is then said that, when there is such conflict, the insurer may consult its own interests solely. Therefore, it is concluded, there can be no agency. This reasoning seems to imply that one party cannot be the agent of the other party. But the law is plainly otherwise. The parties may make that sort of an agreement if they see fit. The result of such a compact is not to leave the promisor free to act as though he had made no promise. On the contrary, his conduct will be subject to closer scrutiny than that of the ordinary agent, because of his adverse interest. . . . Where one acts as agent under such circumstances, he is bound to give the rights of his principal at least as great consideration as he does his own. . . . The insurer cannot betray the trust it has undertaken, nor be relieved from the usual rule that in such a case an agent must serve as he has promised to serve. The fact that there will be, or may be, conflicting interests, is evidence to be considered upon the question of intent to create an agency; but it is of little weight in view of the explicit terms of the present contract. The whole control of negotiations is taken from the insured and given to the insurer." *Douglas v. United States F. & G. Co.* 81 N. H. 371, 127 Atl. 708, 37 A. L. R. 1477, 1482. See, also, *G. A. Stowers Furniture Co. v. American Indemnity Co.* (Tex. Comm. App.) 15 S. W. (2d) 544, 547, 548.

The rule is fundamental that a person may not act as the agent of another where his interests are adverse to those of his principal, *without the full knowledge and consent of his principal.* 1 Mechem, Agency, § 177. Holding the insurance company to be the agent of the plaintiff does not violate this fundamental rule because the plaintiff, when he accepted the policy, knew of the adverse interest of the defendant, and consented that it might act in that capacity, despite its adverse interest.

The defendant company, acting as agent of the plaintiff, contracted to take "complete and exclusive control of the suit against the assured, and the assured was absolutely prohibited from making any settlement, except at his own expense, or to interfere in any negotiations for settlement or legal proceeding without the consent of the company; the company reserved the right to settle any such claim or suit brought against the assured. Certainly, where an insurance company makes such a contract, it, by the very terms of the contract, assumed the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation, and, as such agent, it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business; and if an ordinarily prudent person, in the exercise of ordinary care, as viewed from the standpoint of the assured, would have settled the case, and failed or refused to do so, then the agent, which in this case is the indemnity company, should respond in damages." *G. A. Stowers Furniture Co. v. American Indemnity Co.* (Tex. Comm. App.) 15 S. W. (2d) 544, 547.

In *Wisconsin Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 51, 155 N. W. 1081, this court held that, under the facts stated in the complaint in that action, the insurance company was not liable to respond in damages for its failure to settle the action because the policy did not expressly impose on the company the duty of adjusting claims. In arriving at this conclusion the court was doubtless influenced by its erroneous conclusion that the insurance company could not be charged with the duties and obligations of an agent. But the court did recognize the universally accepted rule that an insurance company, in caring for claims made against the assured, is liable for its negligent breach of any legal duty imposed upon it by its contract of insurance or by the law. The court held that "the power of settlement given the insurer cannot

be used for the purposes of fraud or oppression. . . . The power conferred must not be exercised in bad faith." *Wisconsin Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 53, 155 N. W. 1081.

The interests of the insurance company being to so large an extent adverse to those of the plaintiff, its conduct while acting as agent of the plaintiff with reference to these claims must be subjected to close scrutiny in order to determine whether it acted in bad faith toward the plaintiff.

(4) In determining whether the evidence sustains the findings of the jury that the defendant acted in bad faith, we must examine the course of conduct pursued by the defendant throughout the entire period that the matter was in the defendant's hands. The manner in which the defendant investigated the case and prepared it for trial has an important bearing on this question of good or bad faith.

The insurance company knew that the little girl who was injured was taken to the hospital by a man who was at the scene of the accident, yet it made no effort to see or interview him except to make a perfunctory inquiry at the hospital. The father of the girl had no difficulty in ascertaining the man's name by inquiry at the hospital. The testimony of this eye-witness contained most convincing proof of the negligence of the driver of plaintiff's car.

Further than that, the company did not find or interview the two sisters of the injured girl and two other playmates who were with her at the time of the accident, all of whom testified at the trial of the personal injury action against the plaintiff. It was the testimony of these eye-witnesses, who had not been seen or interviewed by the insurance company, that led this court to say, after reviewing the evidence in that case, that it "clearly presented a jury question, if it did not establish defendants' negligence as a matter of law." *Stoffle v. Hilker,* 189 Wis. 414, 418, 207 N. W. 685.

Before these witnesses testified, the defendant might have been justified in believing that the case was one in which a jury could not find actionable negligence, but that situation was changed when these witnesses testified. The record presents convincing proof that those who represented the defendant company in the trial of the personal injury actions recognized that this proof tended to establish liability. It was a case where a very substantial verdict might be expected if the plaintiff was found guilty òf negligence. The injury had destroyed a portion of the skull bone that covered motor and sensory divisions of the child's brain, which were left unprotected except by soft tissue, so that a blow over the area might cause paralysis or even death.

With this evidence in the case, the jury were warranted in finding that a good-faith effort to protect the interests of the plaintiff required the company to do something more than to suggest an adjustment by the payment of such sums as $500, or even $1,500.

The record shows that those representing the little girl and her father were ready to settle these cases for a sum within the coverage of the policy, before these actions were begun. The adjuster for the company exhibited an indifferent and hostile attitude, refusing to meet and discuss settlement in the offices of the attorneys representing the girl and her father. Matters stood in this position until the trial, when all witnesses agree that the attorney for the insurance company offered $1,500 to adjust the cases. There is a conflict in the proof, but the jury evidently found that, in response to that offer, an attorney representing the plaintiffs replied that the offer was too small, but that if it were raised to $2,500 or $3,000 he would submit it and probably or possibly his clients would accept it.

The record contains no evidence of any further effort on the part of those representing the insurance company to

settle these claims. Those representing the company must have known that the testimony of these eye-witnesses of the accident tended to establish actionable negligence on the part of the driver of plaintiff's car. They must have known that the injury was one for which a verdict might be rendered for a sum much in excess of the coverage of the policy. They knew that they had absolute control of the litigation and of its adjustment. They also knew that plaintiff would be liable for all sums in excess of $5,000 which might be recovered in these actions. Under such circumstances the failure to make some more effective effort to adjust the cases does present evidence which sustains the finding that the defendant acted in bad faith toward the plaintiff in handling these claims and conducting this litigation.

The finding of bad faith by the jury is also sustained by the proof that the defendant company did not find and interview known eye-witnesses of the accident, so as to be in a position to ascertain whether the case presented a jury issue, so that, if it did, it might make some effective effort to adjust these claims without subjecting the plaintiff to liability to a judgment which should be greatly in excess of the amount for which his policy gave him protection.

Each case presenting the issue of the liability of an insurance carrier under such circumstances as here presented, must be determined upon its own peculiar state of facts. If the only proof had been that supplied by plaintiff and the occupants of his car, a different question might have been presented. But the good-faith performance of the obligation which the insurance company assumed when it took to itself the complete and exclusive control of all matters that determine the liability of the insured, requires that it be held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business were he investigating and adjusting such claims.

"Without attempting to further characterize the defendant's position, it is enough to say that it would be a reproach to the law if there were no remedy for so obvious a wrong as was inflicted upon this plaintiff." *Brassil v. Maryland Cas. Co.* 210 N. Y. 235, 104 N. E. 622, L. R. A. 1915A, 629, 632. "The true rule is that each party to such a contract is bound to accord fair and reasonable treatment to the rights of the other. In case of serious injury they each have an interest in the disposal of the claim; and, so far as each is made an actor in that regard by the terms of their contract, he is bound to use due care to protect the other's rights. As to his own rights he may, of course, do as he sees fit." *Douglas v. United States F. & G. Co.* 81 N. H. 371, 127 Atl. 708, 37 A. L. R. 1477, 1483.

(5) The policy provided that no action shall lie against the insurance company upon any claim or for any loss unless action is brought within one year after the payment of such claim or loss. This action was not begun until more than two years after the plaintiff paid these judgments. If this provision applies to such claims as that which is the basis of plaintiff's action here, it is not effective to bar this cause of action. Sub. (a) of sec. 201.19 of the Statutes provides that the time within which such action shall be brought shall not be "less than that prescribed by the statutes of limitations of this state, or specifically authorized by law."

(6) The defendant objects to the form of the verdict on the ground that it does not find the ultimate issuable facts, and that the finding that the defendant acted "in bad faith toward the plaintiff" is a mere conclusion of law. The verdict was submitted to defendant's counsel during the trial. No objection was made to the form of these questions. The only objection made by the defendant to these questions was one based upon the ground that "there is no evidence to sustain an affirmative answer thereto." If these questions are open to the objection now urged, that objection was waived

by failing to interpose it before the case was submitted to the jury.

*By the Court.*—Judgment affirmed.

The following opinion was filed March 10, 1931:

OWEN, J. (*on reargument*). Upon a motion made for a rehearing in this case, it was feelingly contended that the opinion filed herein produced confusion with reference to the character of the duty which an indemnity insurance company owed to its insured in the matter of making a settlement. It was pointed out that there were two lines of authority, one of which holds that the indemnity company is liable for negligent conduct, while the other holds that it is liable only when its conduct or lack of conduct amounts to bad faith. It was contended that while the case of *Wisconsin Zinc Co. v. Fidelity & D. Co.* 162 Wis. 39, 155 N. W. 1081, held that the company was liable only for bad faith, the opinion filed herein overrules that part of the *Wisconsin Zinc Company Case* which negatives the relation of principal and agent between the insurer and the insured, and that the language used in the opinion herein substitutes as a standard for the conduct of the insurance company that of ordinary care instead of good faith, as indicated by the following excerpt: "But the good-faith performance of the obligation which the insurance company assumed when it took to itself the complete and exclusive control of all matters that determine the liability of the insured, required that it be held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business were he investigating and adjusting such claims."

In view of the suggestion that the opinion filed herein threw doubt upon the question considered, we were prompted to grant a rehearing. Upon the rehearing we were favored

by very able and comprehensive briefs and arguments. The subject has received our earnest reconsideration, and it is to be hoped that what is here said will be characterized by a degree of clarity that will enable the views of this court, upon a question which seems to be in more or less tautological confusion, to be understood. We use the term "tautological confusion" because our consideration of the authorities leads us to believe that what confusion there is on the part of courts is purely tautological, and springs from a none too critical use of terms. Terms which are not strictly convertible or synonymous have been used by different courts to indicate the same thing. Negligence has been used by some courts to mean the same thing that other courts have designated as bad faith. Bad faith, especially, is a term of variable significance and rather broad application. Generally speaking, good faith means being faithful to one's duty or obligation; bad faith means being recreant thereto. In order to understand what is meant by bad faith a comprehension of one's duty is generally necessary, and we have concluded that we can best indicate the circumstances under which the insurer may become liable to the insured by failure to settle, by giving with some particularity our conception of the duty which the written contract of insurance imposes upon the carrier.

In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However, all courts are agreed that the insurer does owe to the insured some duty in this respect. This duty is implied as a correlative duty growing out of certain rights and privileges which the contract confers upon the insurer. By the terms of this contract the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or

legal procedure. It is generally understood that these are rights and privileges which it is necessary for the insurer to have in order to justify or enable it to assume the obligations which it does in the contract of insurance. So long as the recovery does not exceed the limits of the insurance, the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured. However, where an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. At this point a duty on the part of the insurer to the insured arises. It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense. It is quite apparent that this right was given to the insurance company to induce it to enter into the contract of insurance, and that it is a necessary right to be possessed by it if it is to write the insurance upon the terms stipulated. It is a right to be exercised by the insurer in its own interest.

It is the right of the insurer to exercise its own judgment upon the question of whether the claim should be settled or contested. But because it has taken over this duty, and because the contract prohibits the insured from settling, or negotiating for a settlement, or interfering in any manner except upon the request of the insurer, such as assisting in the securing of witnesses, etc., its exercise of this right should be accompanied by considerations of good faith. Its decision not to settle should be an honest decision. It should be the result of the weighing of probabilities in a fair and honest way. If upon such consideration it decides that its

interest will be better promoted by contesting than by settling the claim, the insured must abide by whatever consequences flow from that decision. He has so agreed. But as already stated, such decision should be an honest and intelligent one. It must be honest and intelligent if it be a good-faith conclusion. In order that it be honest and intelligent it must be based upon a knowledge of the facts and circumstances upon which liability is predicated, and upon a knowledge of the nature and extent of the injuries so far as they reasonably can be ascertained.

This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. If it exhausts the sources of information open to it to ascertain the facts, it has done all that is possible to secure the knowledge upon which a good-faith judgment may be exercised. But we do not go so far as to say that in order to characterize its judgment as one of good faith it is necessary that it should absolutely exhaust all sources of information. We go only so far as to say that it should exercise reasonable diligence in this behalf, which means such diligence as the great majority of persons use in the same or similar circumstances. This is ordinary care. So it seems to us that the statement in the opinion which is criticised, to the effect that a good-faith decision on the part of the insurance company upon the question of settlement must be preceded by the exercise of that degree of care and diligence which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims, states the duty devolving upon the insurer, just as we declare it to be.

In addition to this, a further duty plainly devolves on the insurer. After it has made an investigation of the accident and the injury, and faces the probability that a recovery will exceed the indemnity, it plainly becomes the duty of the insurer to indicate such fact to the insured, to the end that

he may take such steps as may be open to him for his own protection. What his rights in this respect are, we do not find it necessary now to decide, for reasons which will hereinafter appear. The company owes this duty to the insured because it has taken over all of the rights which formerly belonged to the insured, which could be exercised by him to place him in possession of the facts suggesting the possibility or probability of a recovery beyond the limit of the indemnity. Because the contract takes away these rights from the insured and transfers them to the insurer, the insurer owes to the insured the implied duty to so exercise them as to discover the possible extent of the liability and to communicate such fact to the insured.

It matters not whether we call the relation between the parties that of principal and agent, as some of the cases do, or whether we call the insurer a trustee, as is suggested by respondent's counsel. The nature of the duty devolving upon the insurer by reasonable implication from the express terms of the contract, is as above indicated. We are not so much concerned with the legal definition of the relation between the parties which this contract creates as we are with the duties which it imposes. It was not the purpose of the contract to create any particular relations between the parties. It was the purpose of the contract to create duties and responsibilities. Some of them are expressly stated. Those not stated arise by reasonable implication. In all controversies between the parties to the contract, the question is what are the duties and responsibilities imposed by the contract. Those should not be determined by declaring the legal relation which the contract creates between the parties, as that plainly was not in the minds of the contracting parties. They contracted with reference to duties and liabilities, and those should be ascertained from a consideration of the contract itself.

Further criticism is made of the opinion because it does not discuss the right of the plaintiff to settle his excess liability without the company's consent. The plaintiff knew nothing about his liability except as he learned it from the insurer, to whom the plaintiff and his family made full disclosure of what they knew about the accident, or at least their version of it. He had the assurance of the insurer that it would take care of the matter and that he need give no attention to it. He knew nothing about the possibilities of a recovery in excess of the indemnity. He knew nothing about the extent of the injuries. He was warned to keep hands off. In fact he was advised to keep out of the state of Illinois. Under such circumstances there was no occasion for the insured to attempt to make settlement even though he had the right to do so. Nothing was brought to his attention to suggest even the possibility of a recovery beyond the limit of the indemnity. Whether had he known of the situation he would have had the right to negotiate for a settlement of the excess liability, is a question not before us, and which we do not see fit to consider.

We can see no room to quibble upon the proposition that the insurer made an inadequate, a careless if not shiftless, investigation of the facts with reference to the accident and injury, that it never at any time was in position to exercise a sound or good-faith judgment, and that in none of these respects did it meet the duty which it owed to the plaintiff. As a result of its dereliction in these respects, it never in good faith determined for itself whether the claim should be compromised or settled, nor did it place the insured in possession of facts suggesting liability on his part which would enable him to take any steps to protect himself. As a result of our consideration we entertain no doubt that the mandate in this case is correct, and it is now confirmed.