JUANITA MORALES ET AL., demandantes y recurridos, *v.* AUTOMATIC VENDING SERVICE, INC., demandada; BOSTON INSURANCE COMPANY, demandada y recurrente.

*Número:* R-73-27   *Resuelto:* 27 de enero de 1975

*F. Castro Amy,* abogado de la recurrente; *Pieras & Torruellas* y *Jaime Otero,* abogados de Automatic Vending Service, Inc.; *A. de Jesús Matos* y *R. de Jesús Cintrón,* abogados de Juanita Morales y Raúl Ibarra Morales, recurridos; *Luis E. Miranda Correa, José R. Vélez Torres, José M. Cabrera Deetjen* y *Jesús M. Torres Lassalle,* abogados de José Antonio, Milagros, María de Jesús, Isabelita y Francisco, todos de apellido Ibarra Ortiz, recurridos.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Al dictar sentencia declarando con lugar la demanda incoada por la viuda e hijos de José Ibarra Quintero, el tribunal de instancia condenó a la Automatic Vending Service y a su aseguradora Boston Insurance Co. a pagar a los demandantes solidariamente la suma de $68,000 más $3,800 de honorarios de abogado. Concedió a la viuda la suma de $20,000 de indemnización y al hijo que el causante tuvo en ella $30,000. A sus seis hijos, todos mayores de edad, de un matrimonio anterior les concedió $3,000 a cada uno.

La compañía de seguros solicitó la reconsideración por el fundamento de que la póliza tenía un límite de cubierta de $50,000 y no procedía condenarla solidariamente a pagar la totalidad de la sentencia. Señalada una vista para conocer de esta moción, la asegurada, Automatic Vending Service, alegó que la Boston Insurance Co. era la única responsable de hacer efectiva la sentencia ya que había rehusado una oferta para transigir la reclamación. La parte demandante objetó a que esa cuestión se planteara dentro del presente pleito. Sostuvo que era obligación de la asegurada pagar aquella parte de la sentencia en exceso del límite de la póliza y radicar un pleito separado contra la aseguradora reclamando lo por ella pagado. La aseguradora consintió a que el asunto se dilucidara dentro

del caso de autos. Los demandantes objetaron el procedimiento. Sostuvieron que la cuestión planteada por la aseguradora retardaba la ejecución de la sentencia hasta tanto se dilucidara la controversia existente entre aseguradora y asegurada.

Lo planteado por la asegurada requiere la celebración de un juicio. A todos los efectos se celebró un segundo juicio, seis meses después de dictada la sentencia que declaró con lugar la demanda principal, en el que las partes presentaron evidencia documental y testifical y luego radicaron alegatos. Finalmente tres meses después de celebrada esta vista, el juez adjudicó la controversia entre los dos demandados, determinando que la compañía de seguros actuó de mala fe y negligentemente al no transigir dentro de los límites de la póliza, por lo que venía obligada a pagar la totalidad de la sentencia.

■ En aquellas jurisdicciones donde la aseguradora responde por la totalidad de una sentencia dictada en exceso de la cubierta, cuando se ha rechazado una oferta de transacción, se requiere la radicación de un pleito aparte para reclamar del asegurador lo que el asegurado ha pagado en exceso del límite de la póliza. Se ha sugerido, sin embargo, que la cuestión pueda ser adjudicada dentro del pleito principal mediante la radicación de una demanda contra co-parte. Hills & Pivnicka, *Development and Direction of the California Bad Faith Insurance Doctrine or "O Ye of Little Faith"*, 8 U. San Fco. L. Rev. 29–49 (1973).

Si bien es verdad que el juez actuó erróneamente al conocer de la cuestión que se le planteó dentro del presente pleito, y retardó la ejecución de la sentencia en perjuicio de los demandantes, a nada conduciría devolver el caso para que se radicara un nuevo pleito cuando ya se ha celebrado el juicio y ha habido una adjudicación. Es por eso que procederemos a resolverlo. Consideraremos, según expusimos en la resolución expidiendo el auto de revisión (a) la cuestión de la responsabilidad en exceso del límite de $50,000 establecido en la póliza

y (b) la procedencia de la compensación por sufrimientos mentales fijada a cada uno de los hermanos demandantes, hijos del primer matrimonio.

El tribunal sentenciador concluyó "como cuestión de hecho que la Boston Insurance Company se negó caprichosamente a transigir la reclamación . . . por una suma inferior a los límites de la póliza sin tomar en consideración la posición del asegurado([1]) y a pesar de que la representación legal de la asegurada . . . recomendó que aceptara dicha oferta de transacción por considerarla más que razonable en vista de los hechos entre otros, que el agente de la Automatic Vending Service, Inc., que conducía el vehículo, al ocurrir el accidente incurrió en negligencia crasa y el accidente sin lugar a dudas se debió a su única y exclusiva negligencia y por considerar que los daños sufridos por los demandantes exceden el límite de la póliza. . . ."

La póliza expedida a la Automatic Vending Service contiene las cláusulas usuales y corrientes que aparecen en todas las pólizas para cubrir riesgos en la operación y manejo de vehículos de motor. La aseguradora asume la responsabilidad de defender al asegurado y éste se compromete a notificarle inmediatamente de cualquier pleito radicado en su contra, obligándose a notificarle cualquier demanda o emplazamiento que reciba. El asegurado se obliga a cooperar con la aseguradora, al ser requerido acudirá a todas las vistas, le ayudará a realizar cualquier transacción aportando evidencia y la comparecencia de testigos y cooperará en todo lo que se relaciona con la tramitación del pleito. En esta clase de acciones es el asegurador el que decide si litiga o transige la reclamación. *Insurance Co. of P.R.* v. *Tribunal Superior*, 100 D.P.R. 405 (1972). En virtud de este convenio se sostiene que existe un contrato implícito entre la aseguradora y el

---

([1]) Los demandantes representados todos por el mismo abogado aceptaban primeramente transigir por $30,000, luego de transcurrir algún tiempo subieron a $40,000.

asegurado al efecto de que ninguna de las partes realizará gestión alguna que perjudique los derechos de la otra. *Crisci v. Security Ins. Co.*, 426 P.2d 173 (Calif. 1967); *Comunale v. Traders & General Ins. Co.*, 328 P.2d 198 (Calif. 1958); *Gruenberg v. Aetna Insurance Co.*, 510 P.2d 1032 (Calif. 1973). La relación existente entre asegurador y asegurado en esta clase de contratos es fiduciaria. *Gruenberg v. Aetna Ins. Co.*, supra, pág. 1043; *Baxter v. Royal Indemnity Company*, 285 So.2d 652, 655 (Fla. App. 1973); *Tyler v. Grange Ins. Association*, 473 P.2d 193, 197 (Wash. App. 1970); *Bennet v. Conrady*, 305 P.2d 823, 827 (Kan. 1957); *American Fidelity and Casualty Co. v. All American Bus Lines Inc.*, 179 F.2d 7, 9 (10th Cir. 1949).

■ Debido a esta relación el asegurador está obligado a actuar de la mejor buena fe y con suma discreción y diligencia al considerar cualquier oferta de transacción y está en la obligación de aceptarla si es razonable. A ese efecto la Corte Suprema de California expresó en *Silberg v. California Insurance Company*, 521 P.2d 1103 (1974), a las págs. 1108 a 1109:

> "El principio fue firmemente establecido en Comunale v. Traders & General Ins. Co. (1958) 50 Cal.2d 654, 658–660, 328 P.2d 198 y en Crisci v. Security Ins. Co. (1967); 66 Cal.2d 425, 429–433, 58 Cal. Rptr. 13, 426 P.2d 173, que el deber de un asegurador de aceptar una transacción razonable para dispensar a su asegurado de responsabilidad hacia una tercera persona está implícito en el convenio de buena fe y justo trato que existe en cada contrato de seguro. El convenio requiere que ninguna parte haga algo que perjudique el derecho de la otra de recibir los beneficios del acuerdo, y un asegurador está obligado a dar a los intereses de su asegurado por lo menos tanta consideración como él le da a sus propios intereses."

■ Se justifica imponer a la aseguradora la obligación de pagar la totalidad de la sentencia cuando rechaza una oferta de transacción por varias razones. Los contratos de seguros son los típicos contratos por adhesión en los cuales el ase-

gurado está obligado a aceptar sus términos, *Maryland Casualty v. San Juan Racing*, 83 D.P.R. 559 (1961); Sackville, *The Duty of the Insurer to Settle Within Policy of Limit—A Case of the Standard Contract of Adhesion*, 1968 Utah L. Rev. 72. El asegurador es un experto en la materia, teniendo a su disposición adecuados medios de investigación y abogados especializados, debiendo por tanto, responder por cualquier sentencia que se dicte en su contra al tomar la decisión de rechazar una oferta de transacción dentro de los límites de la póliza. 7A Appleman, *Insurance Law & Practice*, sec. 4711.

La jurisprudencia ha desarrollado varias teorías al imponer al asegurador la obligación de responder por una sentencia en exceso de la cubierta de la póliza cuando se ha rechazado una oferta de transacción. Unas jurisdicciones requieren que se demuestre que el asegurador ha actuado de mala fe al rechazar la oferta. *Brassil* v. *Maryland Casualty Co.*, 210 N.Y. 235, 10 N.E. 622 (1914); *Silberg* v. *California Life Ins. Co.*, 521 P.2d 1103 (Calif. 1974); *Merritt* v. *Reserve Ins. Co.*, 110 Calif. Rptr. 511 (1974); *Gruenberg* v. *Aetna Ins. Co.*, 510 P.2d 1032 (1973); *Lujan* v. *González*, 501 P.2d 673 (N.M. 1972); *Wasserman* v. *Buckey Union Casualty Co.*, 277 N.E.2d 569 (Ohio 1972); *Cheek* v. *Agriculture Ins. Co. of Watertown*, 432 F.2d 1267 (5th Cir. 1970); *Davey* v. *Public National Ins. Co.*, 5 Cal. Rptr. 488, 181 Cal. App.2d 287 (1960); *Comunale* v. *Traders & General Insurance Co.*, 50 Cal.2d 654, 328 P.2d 198 (1958); *Ivy* v. *Pacific Automobile Ins. Co.*, 326 P.2d 140 (1958); *Brown* v. *Guarantee Ins. Co.*, 319 P.2d 69 (1957). Otras requieren que se demuestre que la aseguradora ha actuado negligentemente. *Dumas* v. *State Farm Mutual Automobile Ins. Co.*, 274 A.2d 781 (N.H. 1971); *Dumas* v. *Hartford Accident and Indemnity Co.*, 94 N.H. 484, 56 A.2d 57 (1947); *Tyger River Co.* v. *Maryland Casualty Co.*, 170 S.E. 346 (1933); *Douglas* v. *Fidelity & Guarantee Co.*, 81 N.H. 371, 127 A. 708 (1924); *Cavanaugh* v. *General Accident Fire and Life Assurance Corp.*, 79 N.H. 186, 106 A.

604 (1919). Algunas requieren la concurrencia de ambos conceptos. *Rector* v. *Husted*, 519 P.2d 634 (Kan. 1974); *Tyler* v. *Grange Ins. Assoc.*, 473 P.2d 193, 199 (Wash. App. 1970); *Bollinger* v. *Nuss*, 449 P.2d 502 (Kan. 1969); *Knudsen* v. *Hartford Acc. and Indemnity Co.*, 26 Conn. Sup. 325, 222 A.2d 811 (1966); *Murray* v. *Nasmass*, 355 P.2d 985 (1960); *Hilker* v. *Western Automobile Ins. Co.*, 204 Wis. 1, 235 N.W. 413 (1931).

También se ha sugerido que la norma más razonable y justa sería imponer responsabilidad absoluta a la aseguradora para hacer efectiva la totalidad de la sentencia que se dicte cuando se ha rechazado una oferta de transacción, pero todavía ninguna jurisdicción ha adoptado esta norma. Algunos de los comentaristas que la proponen son de opinión que sería más conveniente adoptarla mediante legislación o vía enmiendas al contrato de seguro, pero la Corte Suprema de California en el caso de *Crisci*, y la de Nueva Jersey en el de *Rova Farms Resort, Inc.* v. *Investors Ins. Co. of Amer.*, 323 A.2d 495 (N.J. 1974), reconocen los méritos intrínsecos de la norma y dejan entrever que la pueden adoptar en el futuro. Barbagelata, *Liability Arising from Insurer's Refusal to Settle Public Liability and Uninsured Motorist Claim*, 3 U. San Fco. L. Rev. 33, 47 (1968–69); Comments, *Insurance-Excess Recovery-Liability Insurer Who Refused Settlement within the Policy Limits Held Liable for Excess Recovery Mental Damage*, 43 N.Y.U.L. Rev. 199 (1968); Eddy, *Crisci's Dicta of Strict Liability for Insurer's Failure to Settle: A Move Toward Rational Settlement Behavior*, 43 Wash. L. Rev. 799 (1967–68); Keeton, *Liability Insurance and Responsibility for Settlement*, 67 Harv. L. Rev. 1136, 1183 (1954); Lundstrom, *Approaching Strict Liability of Insurer for Refusing to Settle Within Policy Limits*, 47 Neb. L. Rev. 705 (1968); Notes and Comments, *An Insurance Company's Duty to Settle: Qualified or Absolute?* 41 So. Cal. L. Rev. 120, 135–142 (1967–68); Peterson, *Excess Liability: Reconsideration of California's*

*Bad Faith Negligence Rule,* 18 Stan. L. Rev. 475, 482–485 (1966); Pressly, *Insurance: Strict Liability for Insurance Companies in Excess Judgment Suits,* 23 U. Fla. L. Rev. 201 (1970–71); Ryan, *Insurer's Duty to Settle—Strict Liability for Excess Judgments: Has the Time Come?* 9 B.C. Ind. & Com. L. Rev. 188 (1967); Shaw, *Duty of Insurer to Settle,* 30 La. L. Rev. 622 (1970); Woodward, *Insurance—Liability Insurer's Duty to Settle* [Illinois] 13 U. Chi. L. Rev. 105 (1945).

▇▇▇ Se ha desarrollado una marcada tendencia, al resolver estas controversias entre asegurador y asegurado, de no ajustarse estrictamente a ninguna de las teorías antes mencionadas y a imponer la responsabilidad en base al convenio implícito que nace de un contrato de seguro que exige al asegurador la obligación de actuar con especial consideración por los intereses del asegurado. Y como el interés primordial del asegurado en esta clase de contratos es protegerse de pagar una reclamación con fondos de su propio peculio, el asegurador está en la obligación de aceptar una oferta razonable de transacción. Para determinar si el asegurador ha tenido en cuenta el interés del asegurado al rechazar una oferta, el criterio normalmente utilizado es el de si un asegurador prudente hubiera aceptado la oferta. *Comunale* v. *Traders & General Insurance Co.,* supra; *Silberg* v. *California Life Ins. Co.,* supra; *Crisci* v. *Security Ins. Company,* supra; *Dumas* v. *Hartford Accident and Indemnity Co.,* supra; *American Mutual Liability Ins. Co.* v. *Cooper,* 61 F.2d 466 (5th Cir. 1932), *cert. denied* 289 U.S. 763 (1933); *Hilker* v. *Western Automobile Ins. Co.,* supra; 231 N.W. 257 (1930) *aff'd. on rehearing;* 204 Wis. 12, 235 N.W. 413 (1931); 1968 Utah L. Rev. 72 (1968); 30 La. L. Rev. 622, 629 (1969–70). La responsabilidad puede imponerse al asegurador si en perjuicio del asegurado ha rechazado indebidamente una oferta razonable de transacción, sin que sea necesario establecer con evidencia directa o circunstancial que actuó deshonesta o fraudu-

lentamente. *Crisci* v. *Security Insurance Company of New Haven, Connecticut,* supra. Como expresó el Profesor Keeton en su artículo *Liability Insurance and Responsibility for Settlement,* 67 Harv. L. Rev. 1136, 1138 (1954):

". . . la compañía tiene un control exclusivo sobre la decisión de hacer transacciones dentro de los límites de la cubierta de la póliza, y como aseguradora y asegurador frecuentemente tienen intereses conflictivos respecto a si cierta transacción debe ser hecha; el criterio que ha sido aceptado es que el poder de la compañía aseguradora para afectar los intereses de su asegurado al igual que sus propios intereses debe estar acompañado de alguna responsabilidad por su ejercicio independientemente del hecho de que esa responsabilidad no esté expresada en la póliza."

Con esto en mente pasemos a considerar los hechos del presente caso.

Se radica una demanda por la viuda y un hijo de José Ibarra Quintero, así como por seis hijos de un matrimonio anterior para resarcirse de los daños sufridos con motivo de la muerte del referido Ibarra Quintero, quien perdió la vida al ser arrollado por un vehículo de motor asegurado por la demandada. Los daños reclamados montaban a $225,000.00. Una investigación de la forma cómo ocurrió el accidente hubiera demostrado que el conductor del vehículo asegurado fue negligente. El propio ajustador de la compañía de seguros declaró a preguntas del abogado de la compañía en cuanto a la investigación que llevó a cabo que "estuve hablando con el chofer del accidente, tomó fotografías, le pregunté a varios testigos, fui a Bayamón a ver a algunos . . . . Por cierto, ninguno de los testigos estaba en disposición de cooperar con uno en cuanto a eso puesto que ellos alegaban que ya habían dado declaración al fiscal, etc., etc., y se limitaron a decirme eso." Esto demuestra que la aseguradora estaba enterada desde el principio que no podía contar con testigos para defender su caso. Por otro lado, se le hace una oferta de transacción de $30,000.00, la rechaza y ofrece $25,000.00

en un caso de muerte, donde la viuda y siete hijos reclaman $225,000.00. Es inescapable la conclusión a que llegó el tribunal de instancia de que "la compañía de seguros actuó de mala fe y negligentemente al no transigir dentro de los límites de la póliza la reclamación." Evidentemente la aseguradora antepuso sus propios intereses a los del asegurado, quien había obtenido una póliza precisamente para no tener que asumir la obligación de pagar con su dinero los daños ocasionados por el vehículo asegurado. Es razonable pues, imponer a la aseguradora la responsabilidad de pagar cualquier suma en exceso del límite de la póliza.

Resta considerar la cuantía de los daños concedidos a los hijos del primer matrimonio. Consideramos que la suma de $3,000 concedida a cada uno de ellos es razonable.

*Procede, por tanto, confirmar la sentencia que dictó el Tribunal Superior, Sala de San Juan.*

El Juez Asociado, Señor Martín, no intervino.