Ramon FELICIANO, Fundadora Valentin and Flores Feliciano Valentin, Plaintiffs-Appellants,

v.

The UNITED SERVICES AUTOMOBILE ASSOCIATION, Defendant-Appellee.

No. 80–1286.

United States Court of Appeals, First Circuit.

Argued Feb. 5, 1981.

Decided April 8, 1981.

Eli B. Arroyo, with whom Jose A. Andreu-Garcia was on brief, for plaintiffs-appellants.

William H. Sanders, Kansas City, Mo., with whom Cesar T. Andreu Megwinoff,

San Juan, P.R., D. Bruce Keplinger and Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., were on brief, for defendant-appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

This diversity action arises from the claim of plaintiffs-appellants, Ramon Feliciano, his wife Fundadora Valentin, and their son Flores Feliciano Valentin, alleging a bad faith failure by defendant-appellee, the United Services Automobile Association (USAA), to settle prior to trial, within the policy limits, an automobile accident case against it and its insured, Francis Marqua. Marqua had assigned to these plaintiffs, prior to the institution of this suit, any cause of action he had against his insurer, USAA. The case was tried, jury waived, in the United States District Court, which found that the plaintiffs "failed to meet their burden of proof in this action, which is, to establish by a preponderance of evidence that USAA acted in bad faith, in an unreasonable manner and contrary to the way a prudent insurer would have acted under similar circumstances." We affirm.

The accident that spawned this lawsuit occurred at an intersection on December 10, 1971. A car owned and operated by Marqua, an officer in the United States Air Force, and insured by USAA, collided with a car operated by Pedro Mercado Figueroa in which Flores Feliciano was a passenger. Flores Feliciano, who was fifteen years old at the time, was permanently crippled as a result of the injuries received in the accident. USAA's policy provided liability coverage to Marqua of $50,000 for each injured claimant. The driver of the car in which Flores Feliciano was riding was charged with and pleaded guilty to a violation of Puerto Rico's traffic laws. No criminal proceedings were brought against Marqua.

The parents of Flores Feliciano brought suit in the Superior Court of Puerto Rico in November 1972 on behalf of their son and themselves against Marqua and USAA,[1] which joined the other driver as a third-party defendant. Marqua retained the services of an attorney at the time the criminal charges against the other driver were being processed. Marqua was advised in February 1973 by letter from his insurer's attorney, Jose Fernandez Paoli, that the complaint was in excess of the policy and that he could obtain the services of his own personal attorney if he wished. He never, however, retained an attorney to represent him individually in regard to the civil action against him.

In July 1975 the attorney for the plaintiffs wrote Fernandez Paoli offering to settle the case for the policy limits of $50,000. The offer was not accepted. The case was scheduled for trial on September 25, 1975. At the request of USAA, Marqua stopped at Tampa on the way to Puerto Rico so that he could meet with USAA's supervisor of litigation, John Murray. Although there is a conflict in the depositions of Murray and Marqua as to what Murray actually told Marqua at the meeting, there is a solid evidentiary basis for the following finding by the district court:

At that meeting, Marqua was once again advised and informed of the nature, extent and seriousness of the injuries suffered by Flores Feliciano Valentin, of his policy limits, of the possibilities of a verdict being rendered in excess of said policy limits and of the offer to settle within policy limits received from plaintiffs' attorneys. Marqua stated that he wished no settlement to be made and emphatically claimed that he was in no way negligent in the matter. The following day Marqua travelled to San Juan, Puerto Rico, en route to Mayaguez, Puerto Rico, where, on the morning of September 25, 1975, he was met and driven to the courthouse at Aguadilla, Puerto Rico, by attorney Jose Fernandez Paoli. Prior to their arrival thereat, said attorney gave Marqua further advice and information similar to that given to him by Mr. John Murray during his stay in Tampa, Florida.

---

1. Under Puerto Rican law, the insurer is a named defendant.

The district court further found that on the day of trial Attorney Fernandez Paoli twice offered to pay plaintiffs the policy limits in settlement of the case. The first offer was made before the trial commenced; the second came during the luncheon recess. This finding credits the testimony of Fernandez Paoli, which was sharply contradicted by the two attorneys who represented the plaintiffs at the superior court trial. We need hardly point out that issues of credibility are for the trier of fact.

The superior court found that the accident was due solely to the negligence of Marqua and awarded damages in the amount of $130,000 [2] plus attorney's fees in the amount of $5,000 and interest. The case was appealed to the Supreme Court of Puerto Rico which affirmed as to damages and attorney's fees but held that both drivers were equally negligent. The other driver, however, had no insurance and no assets. After final judgment by the Supreme Court of Puerto Rico, USAA paid into court its policy obligation of $50,000 plus 50% of the attorney's fees ($2,500) and accrued interest ($13,650). Plaintiffs withdrew this sum, noting in their motion that this satisfied USAA's obligation only.

The plaintiffs then filed an action in the United States District Court against Marqua individually. Attorney Fernandez Paoli was again retained by USAA to defend Marqua. His answer admitted all of the allegations in the complaint.[3] A judgment against Marqua individually in the amount of $97,722.50 was then entered in the United States District Court of Puerto Rico. On July 22, 1978, Marqua executed and delivered to plaintiffs' attorney an "Assignment of Right of Action" in favor of plaintiffs. This action was commenced on December 12, 1978.

Our review of the record convinces us that none of the district court's factual findings were clearly erroneous.

There are two issues on appeal: (1) whether the award of attorney's fees by the Superior Court of Puerto Rico amounted to a res judicata finding that USAA had breached its duty to its insured by failing to settle within the policy limits; and (2) whether the failure of the carrier to settle within the policy limits prior to trial made it liable for the entire judgment as a matter of law.

We agree with the parties that the case of *Morales v. Automatic Vending Service, Inc.* and *Boston Insurance Company*, 103 D.P.R. 281 (1975), is controlling. *Morales* arose from an automobile accident in which a man was killed after being run over by a motor vehicle insured by Boston Insurance Company and operated by an agent of Automatic Vending. Suit was brought by the victim's widow, their son, and his six children by a previous marriage. The trial court ordered the insured and the insurer "to pay plaintiffs solidarily the amount of $68,000 plus $3,800 for attorney's fees." Translation op. at 1. This meant that the insured and insurer were each liable for the full amount of the judgment. Boston Insurance moved for reconsideration on the grounds that its policy had a coverage limit of $50,000. Automatic Vending, in opposing the motion, alleged that the insurer was solely liable because it had refused an offer to settle the claim within the policy limits.

A second trial was held devoted exclusively to the question of whether the insurance company was negligent and acted in bad faith by refusing to settle within the policy limits. The trial court found that the insurer was negligent and had acted in bad faith and ruled that it was liable for the full amount of the judgment. An appeal to the Supreme Court of Puerto Rico followed.

That court noted that normally the filing of a separate action is required to raise the issue of bad faith failure to settle within the policy limits. It felt, however, that because a separate trial had been held on

---

**2.** Flores Feliciano received $100,000 and each of his parents was awarded $15,000.

**3.** Although this complaint is not included in the record, we assume that it stated only that judg-

ment had been rendered against Marqua in the Supreme Court of Puerto Rico and the amount thereof.

the bad faith issue, albeit under the title of the original complaint, remand would serve no purpose. After a comprehensive review of the law in other jurisdictions, the Supreme Court of Puerto Rico ruled that "[l]iability may be imposed on the insurer if the latter unwarrantedly has refused a reasonable settlement offer to the prejudice of the insured, without it being necessary to establish with direct or circumstantial evidence that he acted in a dishonest or fraudulent manner." *Id.* at 8. The court found the following facts important: that an investigation would have shown that the driver of the insured vehicle was negligent; that the insurer knew, because of its own investigation, that none of the witnesses would be helpful; and that it rejected an offer of settlement of $30,000 in the face of a claim of $225,000. Based on the law and the facts, the supreme court affirmed the trial court's finding that the insurance company acted in bad faith and negligently in refusing to settle the claim within the policy limits.

In comparing *Morales* with the case at bar, we first note that, here, there was not a separate hearing on the issue of failure to settle within the policy limits. That issue was not even discussed, let alone adjudicated, in the superior court trial, which was devoted to the issues of liability for the accident and damages. The superior court imposed attorney's fees on the defendants, pursuant to Rule 44.4(d) of the Puerto Rico Rules of Civil Procedure, because they proceeded with "temerity." This was not, however, a finding of unreasonable failure to settle as between the insured and insurer. The superior court specifically found that the judgment against USAA "is limited to the amount of $50,000.00 as stated in the aforementioned insurance policy, but without any limitations in regards to costs, attorney's fees and interest." *Feliciano v. Markua*[4] and *United Servs. Auto. Ass'n,* translation op. at 9 (P.R.Super.Ct. Nov. 11, 1975).

Plaintiffs cannot use the finding of temerity as a basis for a ruling that the superior court had considered and decided the question of whether USAA had breached its duty to its insured, Marqua, by unreasonably failing to settle within the policy limits. Rule 44.4(d) provides: "Where a party has been obstinate, the court shall in its judgment impose on such person the payment of a sum for attorney's fees."

In construing this rule in *Rivera v. Rederi A/B Nordstjernan,* 456 F.2d 970, 975 (1 Cir. 1972), this court said: "To impose attorney's fees the court must find that a party was obstinate, that he was stubbornly litigious, prolonging the duration of the suit or causing the plaintiff unnecessary inconvenience and expenses. *Soto v. Lugo,* 76 P.R.R. 416, 419 (1954)."

*La Playa Santa Marina, Inc. v. Chris-Craft Corp.,* 597 F.2d 1, 7 (1st Cir. 1979) (per curiam).

We have found no cases and appellants have cited none holding or even suggesting that a finding of temerity or obstinacy is res judicata on the issue of whether the insurer breached its duty to the insured by failing to settle within the policy limits. Moreover, under the facts of this case as found by the district court, any temerity would have to be based on the conduct of Marqua, not USAA.

We rule that the award of attorney's fees for temerity in the superior court was not res judicata as to defendant on the issue of bad faith failure to settle and that, under the facts and the law, USAA was not liable to its insured and his assignees for failing to settle within the policy limits before trial.

*Affirmed.*

---

**4.** This is the name of the case as it appears in the court records of Puerto Rico.