SHARON RILEY, ETC., recurridos, *v.* PUERTO RICAN AMERICAN INSURANCE COMPANY y OTROS, recurrentes.

*Número:* RE-91-544        *Resuelto:* 30 de junio de 1992

*Francisco A. Rosa Silva,* abogado de la recurrente; *Héctor Alvarado Tizol,* abogado de la parte recurrida.

## SENTENCIA

Vistos los planteamientos de las partes, los memorandos y documentos anejos, *se expide el auto y se dicta sentencia para revocar la del Tribunal Superior, Sala de San Juan, de 4 de abril de 1991. Continuarán en instancia los trámites de rigor.*

Lo pronunció y manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió opinión concurrente, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso. La Juez Asociada Señora Naveira de Rodón concurre con el resultado sin opinión escrita. El Juez Asociado Señor Hernández Denton concurre con el resultado por entender que aún siendo las declaraciones del doctor Zeni prueba de referencia, según lo dispuesto por la Regla 60 de Evidencia, 32 L.P.R.A. Ap. IV, las cuales son admisibles mediante la excepción que provee la Regla 65(C) de Evidencia, 32 L.P.R.A. Ap. IV. El Juez Asociado Señor Rebollo López emitió opinión disidente. El Juez Asociado señor Fuster Berlingeri no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso.

"Nuestros sentimientos fundamentales nos gobiernan; son la fatalidad. Nuestra lógica espontánea la utilizamos para gobernarnos; es la libertad. La lógica espontánea, además de la ventaja de ser para el individuo un poder rector de sí mismo, está sostenida por un sentimiento de amor a la propia libertad. De ahí su resistencia temerosa a toda invasión exterior. Cedemos ante el error concreto demostrado, pero no ante la idea de que procede de un defecto de método personal que deba rectificarse, porque eso equivale a negarnos, o a transformarnos, que es un modo sutil de negarnos también ...". J. Dualde, *Una revolución en la lógica del Derecho*, Barcelona, Ed. Bosch, 1933, págs. 7–8.

## I

Este recurso nace de un pleito que surge como secuela del caso instado originalmente por la demandante Sharon Riley por daños y perjuicios a causa de la impericia médica de un obstetra y del anestesiólogo que atendieron a su hija Sylvia en el parto. Es la tercera vez que intervenimos.[1] Expongamos someramente su trasfondo.

Final y firme la sentencia que condenó originalmente a los codemandados Dres. Edith Rodríguez Pacheco, Víctor Celso Zeni, y la compañía aseguradora de este último —Puerto Rican American Insurance Company (en adelante P.R.A.I.Co.)— al pago de quinientos ochenta y ocho

---

[1] *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987).

mil cuarenta y dos dólares ($588,042), el doctor Zeni desapareció de Puerto Rico sin dejar rastros de él ni de sus bienes. Acorde con la sentencia, P.R.A.I.Co. satisfizo a la demandante Riley su parte, lo cual extinguió su obligación de pago, quedando viva la obligación del doctor Zeni.

Ante la imposibilidad de cobrar al doctor Zeni su correspondiente porción, la señora Riley demandó alegando que el doctor Zeni tenía una causa de acción contra P.R.A.I.Co. por el rechazo irrazonable de una oferta de transacción que le hiciera la demandante. Basó su alegación en lo resuelto en *Morales v. Automatic Vending Service, Inc.*, 103 D.P.R. 281 (1975). Solicitó que se le adjudicara a su favor la causa del doctor Zeni, para así ella hacer efectiva su acreencia. Es decir, al no haber bienes tangibles objeto de ejecución, pidió ejecutar al doctor Zeni su causa de acción contra la aseguradora por incumplimiento de contrato y de esa manera lograr cobrar el balance de la indemnización. El 16 de noviembre de 1989 el tribunal adjudicó dicha causa de acción a la demandante señora Riley extinguiendo así la obligación entre ésta y el doctor Zeni, y surgiendo entonces una *nueva* obligación entre P.R.A.I.Co. y la señora Riley.

Durante el curso de *este nuevo pleito* ambas partes solicitaron sentencia sumaria. El tribunal las denegó por entender que existían hechos en controversia. Entre los hechos relevantes estaba la defensa alegada por P.R.A.I.Co. de que ellos en efecto habían comunicado al doctor Zeni la posibilidad de transar el pleito conforme a la oferta hecha por la demandante Riley, oferta que estaba dentro de los límites de la póliza. Para probar esa contención tal punto, ante la ausencia del doctor Zeni, P.R.A.I.Co. sometió con su moción de sentencia sumaria una declaración del Lcdo. Alfonso Miranda Cárdenas —quien representaba a P.R.A.I.Co.— expositiva de que en diversas ocasiones había informado al doctor Zeni la posibilidad de transar. Afirmaba, además, que el doctor Zeni había contestado no in-

teresar transacción alguna puesto que entendía que la reclamación era injusta e infundada y creía poder vencer en el pleito. Adujo que P.R.A.I.Co. no actuó en perjuicios de los derechos del doctor Zeni en ningún momento.

La demandante Riley se opuso a que se tomara en consideración la declaración jurada sometida por P.R.A.I.Co., pues entendía que las declaraciones *del doctor Zeni* en ella constituían prueba de referencia inadmisible. El tribunal, a la luz de la prueba documental sometida por ambas partes, por vía de reconsideración, emitió su decisión mediante Sentencia de 8 de abril de 1991. Como conclusión inevitable determinó que la aseguradora había actuado contrario a las normas de buena fe y diligencia que requería una oferta transaccional. En consecuencia le impuso a P.R.A.I.Co. la obligación de pagar la *totalidad* de la sentencia, más intereses al doce por ciento (12%) anual a partir de 12 de diciembre de 1987 hasta la fecha de emisión de esta sentencia, y a razón de once por ciento (11%) anual hasta la fecha de su pago total.

Con posterioridad, ambas partes sometieron distintas mociones ante el tribunal. En especial P.R.A.I.Co. solicitó determinaciones adicionales de hecho y de derecho y la demandante Riley la reconsideración. El 14 de junio el tribunal resolvió que denegaba las determinaciones de hechos adicionales, pero acogió la reconsideración a los únicos fines de modificar los intereses para que se pagasen al doce por ciento (12%) a partir de 12 de diciembre de 1987 hasta el 16 de noviembre de 1989, y a razón de once por ciento (11%) desde la emisión de esta sentencia hasta su pago final.

Nuevamente la demandante Riley presentó reconsideración y el tribunal modificó la sentencia para corregir las cuantías concedidas por haber errores tipográficos en la

sentencia anterior. A solicitud de P.R.A.I.Co., mediante orden de mostrar causa, revisamos.(²)

## II

Las cuestiones planteadas por P.R.A.I.Co. no se desglosan ni discuten separadamente.

Aún así, procede revocar pues incidió el ilustrado foro de instancia al determinar que lo afirmado por el licenciado Miranda Cárdenas en su declaración jurada era prueba de referencia. En efecto, dicho foro, luego de examinar el significado de prueba de referencia conforme la Regla 60(C) de Evidencia, 32 L.P.R.A. Ap. IV, concluyó que las declaraciones del doctor Zeni reproducidas en las declaraciones juradas caían bajo tal definición por haber sido hechas *fuera del recinto del tribunal*, y traídas al pleito para probar como *cierto su contenido*.

Las declaraciones del doctor Zeni no eran susceptibles de ser verdaderas o falsas. En realidad, la única duda posible en cuanto a dichas declaraciones era si en verdad el doctor Zeni las había hecho o no. La duda sobre si un hecho ocurrió no es fundamento para excluir evidencia.

Nótese que el inciso (C) de la regla requiere, para que se satisfaga la definición de prueba de referencia, que la declaración se ofrezca "para probar la verdad de lo aseverado". En ausencia de una proposición u oración declarativa, no puede hablarse de "verdad". La verdad o falsedad sólo puede predicarse del juicio o proposición. *Es un principio fundamental de*

---

(²) Plantea la negativa a considerar las declaraciones juradas relativas a la negativa del doctor Zeni a evaluar una transacción del pleito subyacente, por el fundamento de que las expresiones del doctor Zeni eran prueba de referencia; evaluar la credibilidad de los declarantes en un procedimiento de sentencia sumaria y al descartar la declaración del Lcdo. Alfonso Miranda Cárdenas por considerarla increíble, sin que fuera contradicho y sin razón o causa legal alguna; determinar que la declaración del doctor Méndez Cortés no era pertinente; conceder la sentencia sumaria solicitada por las demandantes basándose únicamente en especulaciones y conjeturas; conceder daños consistentes en la totalidad de la deuda del doctor Zeni bajo la sentencia en el pleito subyacente e intereses.

*la Lógica. Los conceptos, deseos, mandatos, preguntas, etc., no son verdaderos ni falsos. Ni siquiera los razonamientos o argumentos son verdaderos o falsos; son válidos o no válidos. Verdadero o falso sólo puede serlo una proposición, una aseveración, como dice la regla 60.* (Énfasis en el original suprimido y énfasis suplido.) E.L. Chiesa, *Práctica Procesal Puertorriqueña: Evidencia*, San Juan, Pubs. J.T.S., 1985, pág. 273.

Y en *Pueblo v. Rivera Burgos*, 106 D.P.R. 528, 530–531 (1977), dijimos:

Con alguna frecuencia en nuestros tribunales de instancia abogados, fiscales y jueces se inclinan a considerar que todo lo que un testigo exprese que alguien le haya dicho es prueba de referencia. Basta que el testigo diga "Fulano me dijo ...." para que se produzca de inmediato una objeción, y enseguida el pronunciamiento del juez: "Con lugar." *No siempre es prueba de referencia lo manifestado por un tercero al testigo, o lo que el testigo oyó que un tercero dijo. Para que lo manifestado sea prueba de referencia, y por tanto inadmisible a menos que caiga bajo alguna excepción, la manifestación debe tener algún contenido que pueda ser cierto o falso, y que dicha manifestación, al ser trasmitida al tribunal por el testigo que la oyó, se produzca para probar que lo manifestado es cierto.* (Énfasis suplido.)

Aclarado este extremo, es obvio también que la declaración del licenciado Miranda Cárdenas en cuanto a las expresiones que hizo al doctor Zeni, es evidencia admisible. Además, en la etapa procesal de sentencia sumaria, el tribunal erró al descartar la declaración del licenciado Miranda Cárdenas por considerarla *increíble* sin que ésta fuera contradicha. La adjudicación de credibilidad no procedía en trámite de sentencia sumaria.

### III

La adjudicación de este aspecto probatorio es esencial para una completa y justa adjudicación. Distinto al caso de *Morales v. Automatic Vending Service, Inc.*, supra, aquí P.R.A.I.Co. necesitaba el consentimiento expreso del doctor Zeni para transigir el pleito. Es un error aplicarlo sin ex-

plorar el verdadero alcance de las diferencias en unas cláusulas de las pólizas.

En primer lugar, el citado caso trataba de una póliza de seguros para cubrir riesgos en la operación y manejo de vehículos de motor. Contenía los términos usuales y corrientes en ese tipo de póliza. La allí aseguradora era responsable de defender al asegurado de cualquier reclamación que estuviera bajo la cubierta; y el asegurado se obligaba a notificarle de cualquier pleito radicado; acudir a todas las vistas; ayudar a realizar cualquier transacción y a cooperar en todo lo que se relacionara con la tramitación del pleito. Debido a la naturaleza de esa relación apuntamos que en "esta clase de acciones es el asegurador el que decide si litiga o transige la reclamación". *Morales v. Automatic Vending Service, Inc.*, supra, pág. 284. Resolvimos que existía "un contrato implícito entre la aseguradora y el asegurado al efecto de que ninguna de las partes realizara gestión alguna que perjudique los derechos de la otra". Íd., págs. 284–285. También sostuvimos que la relación existente entre asegurador y asegurado en esta clase de contratos era fiduciaria, y como consecuencia "el asegurador está obligado a actuar de la mejor buena fe y con suma discreción y diligencia al considerar cualquier oferta de transacción y está en la obligación de aceptarla si es razonable". Íd., pág. 285.

Se advierte, pues, que el criterio rector allí expuesto para determinar si la negativa en cuanto a la oferta de transacción era razonable, fue *objetivo*: si una aseguradora prudente en la misma situación hubiera aceptado la oferta de transacción. Jamás sugerimos que mediante decisión del asegurador, ex parte, a base de un estudio de su abogado, podía quedar ésta liberada de responder por un sentencia en exceso. Por imperativo, la norma objetiva tenía que estar atada al análisis posterior del foro judicial adjudicando la controversia.

Ello es compatible con el principio de que en este tipo de

seguro, la aseguradora tiene absoluta autoridad para aceptar o descartar una oferta de transacción dentro de los límites de la póliza. El asegurado no tiene poder para obligarlo o impedirle que acepte o rechace la oferta. 7c *Appleman, Insurance Law and Practice* Sec. 4711, págs. 367–369 (1979).

Sin embargo, repetimos, este control absoluto no puede ser ejercitado en forma arbitraria; si la aseguradora declina la oferta en la creencia que su asegurado no es responsable, esa creencia debe ser justificada, razonable y no arbitraria o caprichosa. *Tyler v. Grange Insurance Association*, 473 P.2d 193, 198 (Wash. 1970); *Bourget v. Government Employees Insurance Company*, 456 F.2d 282 (2do Cir. 1972). El rechazo de una oferta a la luz de los criterios objetivos expuestos es una materia de derecho a ser determinada por el tribunal. La aseguradora se arriesga al resultado del litigio y a que el tribunal resuelva que la oferta fue rechazada indebidamente. *Samson v. Transamerica Ins. Co.*, 636 P.2d 32, 46 (Cal. 1981).

No debe, pues, malinterpretarse esta peculiar dinámica. La aseguradora siempre tiene la obligación de considerar y negociar de forma honesta y justa cualquier oferta que sea por menos del límite de la póliza. Si la oferta no aceptada era razonable, será responsable por la totalidad de la sentencia, aún en exceso del límite.

En el caso típico de contrato de seguros en que la aseguradora se reserva el control absoluto de aceptar o rechazar una oferta de transacción, no puede esgrimirse como defensa contra el asegurado el hecho que éste no le haya requerido la aceptación de una oferta dentro del límite de la póliza. *Member Mutual Insurance Company v. Blissett*, 492 S.W.2d. 429 (1973). Máxime, cuando un mismo abogado simultáneamente representa a la aseguradora y al asegurado, en que se impone como requisito adicional, la completa divulgación (*full disclosure*) de los términos de la oferta.

El contrato de seguros suscrito por P.R.A.I.Co. y el doctor Zeni cubre los daños ocasionados a terceros como resultado de su impericia médica. Además de las cláusulas típicas antes expuestas, dispone que *"la compañía de seguros sólo estará obligada a pagar, cuando la responsabilidad de su asegurado haya sido adjudicada por un tribunal; o por acuerdo escrito del asegurador, el perjudicado y la aseguradora"*. (Traducción nuestra.)

No estamos, pues, ante un seguro en el cual la aseguradora tiene absoluta potestad para aceptar o rechazar una oferta de transacción. *Es totalmente ilógico sostener que P.R.A.I.Co. necesitaba el consentimiento expreso del asegurado doctor Zeni para transigir, pero no su consentimiento para rechazar una oferta de transacción.* ¿Cómo podía seriamente considerar una oferta —decidir si la acepta o no— teniendo en cuenta el interés de su asegurado doctor Zeni, si no se la comunicó a éste, como persona que tenía que consentir?

El verdadero alcance de esta cláusula fue imponerle la obligación a la aseguradora de comunicarle al doctor Zeni la oferta de transacción y discutir las ventajas y desventajas de aceptarla o rechazarla. En este tipo de póliza, además de la responsabilidad económica, está implicada la reputación profesional del médico. Para *transigir* un pleito se requiere el consentimiento *escrito*; claro está, adviértase que no se exige el consentimiento escrito para *rechazar* la oferta.

Ante estas cláusulas, es obvio que la aseguradora no queda liberada de una sentencia en *exceso* del límite de la póliza, meramente demostrando que al rechazar la oferta no fue negligente, poco prudente o no actuó de mala fe. Esas características presuponen probar que comunicó la oferta a su asegurado.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

*Disentimos.* Contrario a la mayoría de los integrantes del Tribunal, somos del criterio que no sólo procede la revocación de la sentencia sumaria que en el presente caso dictara el foro de instancia a favor de la parte demandante recurrida sino que, a nuestro entender, lo jurídicamente procedente resulta ser que se dicte sentencia sumaria a favor de la recurrente Puerto Rican American Insurance Company (en adelante P.R.A.I.Co.). *Veamos por qué.*

I

Los hechos pertinentes que dan lugar al presente recurso resultan ser de sencillo relato. Contra la recurrente P.R.A.I.Co. y su asegurado, el Dr. Víctor Celso Zeni, recayó sentencia en relación con un pleito sobre impericia médica. P.R.A.I.Co., conforme a los términos y condiciones de la póliza de seguro que había expedido, satisfizo a la parte demandante la suma de ochocientos sesenta y nueve mil doscientos ochenta y ocho dólares ($869,288), viniendo obligado a satisfacer el remanente de quinientos ochenta y ocho mil cuarenta y dos dólares ($588,042), el doctor Zeni. Habiéndole resultado imposible cobrar el exceso sobre los límites de la póliza del doctor Zeni, la parte demandante en un *peculiar* y sui géneris procedimiento de "subrogación" —*la juridicidad del cual no está planteada en estos momentos ante el Tribunal*— logró que el foro de instancia le "adjudicara" una alegada "causa de acción" que supuestamente tenía el doctor Zeni contra P.R.A.I.Co.; predicada dicha causa de acción en un alegado "rechazo irrazonable", por parte de P.R.A.I.Co., de una oferta de transacción que

la parte demandante le había hecho, pendiente el pleito, a la mencionada compañía de seguros.

La parte demandante solicitó que se dictara sentencia sumaria a su favor. De una lectura de la extensa, y complicada, moción a esos efectos radicada por dicha parte surge —en lo pertinente a la controversia ante nuestra consideración— que el fundamento principal en que se apoya la misma es en el hecho de que P.R.A.I.Co. nunca le notificó, *por escrito*, al doctor Zeni de la oferta de transacción que hiciera la parte demandante, como tampoco requirió de su asegurado que confirmara, *por escrito*, la aceptación y/o rechazo de la misma, "debido a que de no hacerlo así, como sucedió en el caso de autos, la compañía de seguros [alegadamente] no tiene defensa de clase alguna para poder liberarse de tener que pagar la sentencia en exceso sobre los límites de la póliza". Apéndice 10, pág. 105.[1]

La aquí recurrente P.R.A.I.Co., por su parte, no sólo se opuso a la moción de sentencia sumaria que radicara la parte demandante sino que, igualmente, radicó una moción en solicitud de que se dictara sentencia sumaria a su favor. Su posición a esos efectos estuvo predicada, de manera principal, en una declaración jurada suscrita por el Lic. Alfonso Miranda Cárdenas, abogado que había representado tanto a P.R.A.I.Co., como al doctor Zeni, en el pleito original de impericia médica. En la citada declaración el referido abogado expresó, en síntesis, que la antes mencionada oferta de transacción había sido rechazada no sólo a base de una evaluación que él, como abogado, había hecho del caso sino que por razón de que el doctor Zeni le había específicamente instruido para que rechazara la oferta.

El tribunal de instancia, originalmente, declaró sin lu-

---

[1] Véase, en específico, las páginas 13 y 14 de la referida moción de sentencia sumaria (páginas 104 y 105 del apéndice) y, en general, las páginas 16 y 21 de dicho escrito. (Páginas 107 y 112 del referido apéndice.)

gar ambas solicitudes de sentencia sumaria. En etapa de reconsideración, sin embargo, declaró con lugar la moción a esos efectos radicada por la parte demandante. Determinó dicho foro, en síntesis y en lo pertinente, que: lo alegadamente expresado por el doctor Zeni al licenciado Miranda Cárdenas en efecto constituía "prueba de referencia" por lo que dicha evidencia debía ser "excluida". Aparentemente acogiendo la posición a esos efectos sustentada por la parte demandante, el foro de instancia entendió que dicha situación dejaba "huérfana" a la parte demandada recurrente de prueba alguna en relación con la moción de sentencia sumaria radicada por la parte demandante. En consecuencia, condenó a P.R.A.I.Co. a satisfacerle a la parte demandante el exceso sobre los límites de la póliza, esto es, la suma adicional de quinientos ochenta y ocho mil cuarenta y dos dólares ($588,042).

Inconforme, P.R.A.I.Co. acudió ante este Tribunal en revisión de la referida sentencia sumaria, imputándole error al foro de instancia al así decidir. El 22 de noviembre de 1991 le concedimos término a los demandantes recurridos para que "comparezcan por escrito a mostrar causa, si la hubiere, por la cual no deba expedirse el auto solicitado y revocarse la sentencia sumaria del Tribunal Superior, Sala de San Juan de fecha 8 de abril de 1991 por el fundamento de que existió controversia sobre cuestiones de hechos esenciales a su adjudicación, las cuales deben dilucidarse en audiencia plenaria". Resolución de 22 de noviembre de 1991. Dicha parte ha comparecido.

En el día de hoy, una mayoría de los integrantes del Tribunal revoca dicha sentencia por entender, conforme se expone en la Opinión concurrente que sirve de base a la Sentencia mayoritaria emitida, que las "declaraciones del doctor Zeni, aunque hechas extrajudicialmente, no son prueba de referencia ...". Siendo dichas manifestaciones, conforme el criterio mayoritario, admisibles en evidencia, este Foro decreta la revocación de la sentencia sumaria

emitida a nivel de instancia ya que la misma no puede sostenerse al existir controversia sobre hechos materiales; devolviéndose el caso al tribunal de instancia para procedimientos ulteriores compatibles con lo resuelto.

## II

En *Morales v. Automatic Vending Service, Inc.*, 103 D.P.R. 281, 285 (1975), expresamos que debido a que la "relación existente entre asegurador y asegurado en esta clase de contratos es fiduciaria ... el asegurador está obligado a actuar de la mejor buena fe y con suma discreción y diligencia al considerar cualquier oferta de transacción y está en la obligación de aceptarla si es razonable". Manifestamos, en adición, que la jurisprudencia norteamericana había desarrollado "varias *teorías* al imponer al asegurador la obligación de responder por una sentencia en exceso de la cubierta de la póliza cuando se ha rechazado una oferta de transacción". (énfasis suplido) íd., pág. 286. Específicamente señalamos que unas "jurisdicciones requieren que se demuestre que el asegurador *ha actuado de mala fe* al rechazar la oferta". (énfasis suplido) íd., pág. 286; otras han requerido "que se demuestre que la aseguradora *ha actuado negligentemente*". (énfasis suplido) íd., pág. 286; y algunas "requieren la *concurrencia de ambos conceptos.*" (énfasis suplido) íd., pág. 287. Señalamos, por último, en el citado caso de *Morales v. Automatic Vending Service, Inc.*, ante, pág. 288, que se "ha desarrollado una *marcada tendencia*, al resolver estas controversias entre asegurador y asegurado, de *no* ajustarse estrictamente a ninguna de las teorías antes mencionadas *y a imponer la responsabilidad en base al convenio implícito que nace de un contrato de seguro que exige al asegurador la obligación de actuar con especial consideración por los intereses del asegurado*" (énfasis suplido); y que para "determinar si el asegurador ha tenido en cuenta el *interés del asegurado* al

rechazar una oferta, *el criterio normalmente utilizado es el de si un asegurador prudente hubiera aceptado la oferta"* de transacción que se hizo (énfasis suplido) íd., pág. 288.

De manera, pues, que en nuestra jurisdicción, y a base de la norma jurisprudencial establecida por este Tribunal en *Morales v. Automatic Vending Service, Inc.*, ante, una compañía de seguros que —oportunamente ha levantado en el pleito los términos y condiciones de la póliza que expidió a favor de su asegurador— *no responde por el exceso sobre los límites de la póliza expedida decretado por sentencia, a menos que se demuestre que su actuación al rechazar una oferta de transacción que le hiciera la parte demandante fue una no prudente, negligente, o hecha de mala fe.* Procede que se *enfatice* el hecho de que la decisión que emitiéramos en *Morales v. Automatic Vending Service, Inc.*, ante, *no exige que la compañía de seguros le notifique de dicha oferta a su asegurador.* En otras palabras, *la compañía puede rechazar la oferta sin el concurso o consentimiento de su asegurador*, no incurriendo en responsabilidad alguna mientras no se le pruebe, *repetimos*, que su rechazo fue uno irrazonable, negligente o hecho de mala fe.([2])

En el *caso específico* ante nuestra consideración, *y por tratarse de una póliza de seguros que protege contra actos de impericia médica*, P.R.A.I.Co. necesitaba el consentimiento expreso del médico asegurado para poder *transigir* el pleito. Ello *no* significa, sin embargo, que P.R.A.I.Co. necesitara, conforme lo resuelto en *Morales v. Automatic Vending Service, Inc.*, ante, el consentimiento del doctor Zeni para *rechazar* la oferta de transacción que le hiciera la parte demandante. Ello es más que suficiente para derrotar la contención de la parte demandante —erróneamente

---

([2]) Claro está, si la compañía prueba que le comunicó la oferta al asegurado y que éste la rechazó, el asegurador queda "automáticamente" liberado de responsabilidad.

acogida por el foro de instancia— a los efectos de que procede la solicitud de sentencia sumaria radicada por dicha parte por el fundamento de que P.R.A.I.Co. no le notificó por escrito de la oferta al doctor Zeni y que el alegado rechazo de éste tampoco constaba por escrito.

### III

Examinamos, a la luz de la normativa jurisprudencial vigente en nuestra jurisdicción, los hechos específicos y pertinentes del caso ante nuestra consideración. Como expresáramos anteriormente, en apoyo de su moción de sentencia sumaria, P.R.A.I.Co. presentó una declaración jurada del Lic. Alfonso Miranda Cárdenas, un experimentado abogado en el campo de los daños y perjuicios. En dicha declaración, el mencionado abogado expresó, en lo pertinente, que:

> 3. Durante el trámite del caso tuve la oportunidad de reunirme en varias ocasiones con el Dr. Zeni *y con otros doctores especialistas en anestesiología* que de una manera u otra cooperaron con el Dr. Zeni en la defensa del pleito. En varias ocasione[s] les expliqué las normas de derecho relativas a la responsabilidad por daños causadas por mala práctica médica en Puerto Rico. Así advertidos, *todos esos médicos,* incluyendo al Dr. Zeni, *estaban contestes en que los hechos que presentaba el caso no indicaban mala práctica profesional de parte del Dr. Zeni; que éste había cumplido con las normas de la mejor práctica de la medicina en el tratamiento brindado a la menor demandante.* Más aún, el Dr. Zeni entendía que había prestado ayuda generosa y gustosamente a las demandantes en un momento de emergencia, sin cobrar por sus servicios; y estaba sumamente molesto e irritado con la reclamación instada por la Sra. Riley, que consideraba infundada, injusta y abusiva. *Como abogado —luego de recibir las opiniones de esos peritos anestesiólogos y de estudiar detenidamente los hechos y circunstancias del caso— yo compartía la opinión del Dr. Zeni de que éste no había incurrido en mala práctica que le pudiera hacer responsable a la parte demandante.* (Énfasis suplido.) Apéndice II, *exhibit* II, pág. 372.

Como surge de una mera lectura de lo antes reseñado, el rechazo por parte de P.R.A.I.Co. de la oferta de transacción que a éste le hiciera la parte demandante —*que, dicho sea de paso, fue por el límite máximo de la póliza expedida*— se basó no sólo en la alegada negativa del doctor Zeni a consentir a dicha transacción *sino que en la responsable y fundamentada evaluación que del caso hiciera el experimentado abogado a cargo del mismo*; hecho que, conforme la norma establecida en el antes citado caso de *Morales v. Automatic Vending Service, Inc.*, ante, *impide que la compañía aseguradora pueda ser responsabilizada por cualquier exceso sobre el límite de la póliza de seguro expedida por ella.*

El hecho innegable de que, posteriormente, el tribunal de instancia resolviera que el doctor Zeni fue negligente en el tratamiento que le brindó a las demandantes y que, inclusive, dicho foro determinara que éste había sido "temerario" al defenderse de la demanda —determinaciones que este Tribunal confirmó posteriormente en etapa de revisión— *no significa de ninguna manera que el rechazo de la oferta por parte de P.R.A.I.Co. fuera uno negligente, no prudente y de mala fe*; requisito exigido por nuestra decisión en *Morales v. Automatic Vending Service, Inc.*, ante, para poder responsabilizar a una compañía de seguros por el exceso de la póliza concedido por sentencia. Personas razonables pueden diferir razonablemente sobre un hecho. ¿Quién puede negar, *con absoluta certeza*, que la evaluación, y determinación, que sobre ausencia de negligencia por parte del doctor Zeni hiciera el licenciado Miranda Cárdenas realmente no haya sido la correcta y procedente en derecho?

De todas maneras, somos del criterio que el rechazo de una oferta de transacción por una compañía de seguros demandada —basado el mismo en la responsable, diligente, y fundamentada evaluación que del caso haya hecho el abogado de dicha parte— *libera* a dicha aseguradora del

riesgo de tener que responder por el exceso de la póliza expedida por ella, *independientemente de que*, posteriormente, el foro judicial encuentre responsable, y temerario, al asegurado de dicha compañía de seguros. Eso se desprende, y es consecuencia lógica, de lo que resolvimos en *Morales v. Automatic Vending Service, Inc.*, ante. La decisión emitida en dicho caso *no* requiere que la evaluación que del caso realice la compañía de seguros, con el propósito de determinar si acepta o no la oferta de transacción que se le hace, sea una jurídicamente correcta. Lo que dicha decisión exige es que esa evaluación sea hecha en forma diligente y la misma sea producto de la buena fe y de la prudencia.

*Resolver lo contrario tendría la consecuencia nefasta de obligar a las compañías de seguros a aceptar todas y cada una de las ofertas de transacción que le sean hechas por cuanto no podrían "correrse el riesgo" de que posteriormente recayera en el caso un dictamen judicial contrario a su posición.* Ello constituiría, a nuestro entender, no sólo una situación insostenible sino que un absurdo jurídico.

## IV

En la opinión concurrente se expresa que, como la póliza de seguro aquí en controversia requiere que la compañía de seguros obtenga el consentimiento por escrito del médico asegurado para *transigir* el pleito, se *debe exigir* que la compañía, antes de *rechazar* una oferta de transacción, obtenga igualmente el consentimiento del médico para poder rechazar la oferta; *requisito que no exigen las referidas pólizas de seguro.*

Esto es, "donde la póliza dice, dice; y donde ésta no dice, *debe* de decir". En otras palabras, estos tres compañeros Jueces pretenden reescribir, a su antojo, las pólizas de seguro relativas a impericia médica. Dicha actuación, sin embargo, *no* nos debe sorprender. Después de todo, no es la

primera vez que ello sucede. Recientemente, en *Toll y Sucn. Rivera Rojas v. Adorno Medina*, 130 D.P.R. 352 (1992), este Tribunal reescribió, a su forma y manera, la Sec. 10, Art. II de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, *hazaña que es una tanto más difícil de lograr que reescribir una mera póliza de seguro.*

## V

En resumen, habiendo presentado la recurrente P.R.A.I.Co. evidencia —a través de la declaración jurada del licenciado Miranda Cárdenas— demostrativa de que el rechazo de la oferta de transacción no fue uno negligente, poco prudente, o hecho de mala fe, la parte demandante debió haber presentado prueba en contrario y no "cruzarse de brazos". Véanse: Regla 36.5 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III); *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 D.P.R. 714, 721 (1986).

La parte demandante no presentó contradeclaraciones juradas, o ninguna otra clase de evidencia, que refutaran la contención de P.R.A.I.Co. en su solicitud de sentencia sumaria. No existiendo ninguna otra evidencia de la cual surja la existencia de controversia de hechos sobre lo afirmado por el licenciado Miranda Cárdenas, a los efectos de que el rechazo de la oferta de transacción se debió, entre otros, a la evaluación responsable y fundada que, como abogado, él hiciera del caso, *lo jurídicamente procedente en el presente caso sería que se dicte Sentencia no sólo revocatoria de la emitida por el tribunal de instancia sino que declarando con lugar la moción de sentencia sumaria radicada por la recurrente P.R.A.I.Co.*

Lo expuesto hace *totalmente innecesario* que se considere, y resuelva, si lo que le expresara el doctor Zeni al licenciado Miranda Cárdenas —relativo al rechazo de la oferta— constituye, o no, "prueba de referencia".